IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MATTHEW JONES #2291637 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv318 |
| HODGE UNIT STAFF OFFICERS, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff Matthew Jones, an inmate of the Texas Department of Criminal Justice (TDCJ), proceeding *pro se*, filed this complaint under 28 U.S.C. § 1983 complaining of alleged violations of their constitutional rights in the TDCJ's Hodge Unit. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Plaintiff is a transgender female who is biologically male and is housed with male prisoners in the Hodge Unit. They[1] allege in their second amended complaint that Defendants are: (1) deliberately indifferent to their serious medical needs in refusing to provide sex reassignment surgery; and (2) deliberately indifferent to their safety in requiring them to live and shower with male inmates. (Dkt. #21.) Defendants—Dr. Lannette Linthicum, Dr. Owen Murray, Susan Womack, and Daphne Free—moved to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. #42.) Plaintiff responded in opposition to the motion,

---

[1] The undersigned has opted to refer to Plaintiff with "they/them" pronouns out of respect for their expressed gender identification. This, of course, has no bearing on the Court's evaluation of the constitutional and other legal issues central to this lawsuit. Defendants choose to refer to Plaintiff as "he/him," and it would be improper for the Court to require them to do otherwise. *United States v. Varner*, 948 F.3d 250, 254–55 (5th Cir. 2020) (observing that "no authority supports the proposition that we may require litigants, judges, court personnel, or anyone else to refer to gender-dysphoric litigants with pronouns matching their subjective gender identity").

which is fully briefed and ripe for review. (Dkt. #53.) For reasons explained below, the undersigned recommends that the motion be granted and that Plaintiff's lawsuit be dismissed with prejudice.

## I. Plaintiff's Pleadings

Plaintiff's original complaint vaguely alleged hate crimes against transgender inmates without alleging any specific facts about incidents or injuries, mentioning any acts or omissions by the named defendants, or even identifying the Plaintiff as transgender in the statement of claim. (Dkt. #1 at 4.) Accordingly, the Court ordered them to file an amended complaint to "explain in detail how and when [their] constitutional rights were allegedly violated, identify the defendants responsible for those violations, specify how each defendant personally violated [their] constitutional rights, and explain how [they were] harmed or injured by those violations." (Dkt. #4 at 2.)

Plaintiff's first amended complaint did not cure the deficiencies of the original. It named only "Hodge Unit Staff Officers, et al." as defendants, alleged abstractly that housing transgender inmates with men violated the constitution, but never alleged specific facts about Plaintiff's gender, housing assignment, or experiences. (Dkt. #6.) The Court again ordered Plaintiff to amend their pleading, reiterating with emphasis the same instructions from the previous order. (Dkt. #19 at 3.)

Plaintiff's second amended complaint is dated December 15, 2021. (Dkt. #21 at 9.) It expressly asserts that Plaintiff "identifies as a transgender woman." (*Id.* at 5.) Plaintiff alleges that Dr. Owen Murray "keeps den[ying] sex reassignment surgery" for Plaintiff, although Plaintiff is on hormone therapy for their gender dysphoria. (*Id.* at 7.)

Plaintiff also alleges that they have repeatedly asked to be housed with another transgender female cellmate, but Defendant Womack keeps assigning them male cellmates. (*Id.* at 5.) As a result, "the plaintiff is being attack[ed] and the plaintiff['s] cellies keeps on trying to have sex with the plaintiff." (*Id.*) Plaintiff alleges they told Sergeant Free about some incident(s) that they do not describe, and that Free had them moved, but they still were not housed with another transgender female. (*Id.*) Plaintiff alleges that they "keep on fighting to be housed with a transgender cellie," and that the failure to provide such housing is putting them in danger. (*Id.*)

In a sworn statement dated November 29, 2021, by fellow inmate Bobby Loftin ("Loftin Declaration"), which Plaintiff attaches to their second amended complaint, Loftin asserts that "C.O.s are attacking" transgender inmates. (Dkt. #21-1.) Loftin also says that "on 8-13-21 a non transgender attack[ed]" Plaintiff and that Plaintiff reported the incident to a lieutenant. (*Id.*) The unnamed lieutenant advised Plaintiff to submit an I-60 request to be moved, but Plaintiff had not yet been moved. (*Id.*)

Plaintiff alleges that they are also required to shower with male inmates despite their repeated requests to Free and Womack for transgender females to shower separately from other inmates. (Dkt. #21 at 6.) Plaintiff has not showered for three months because they fear that "someone may come in the shower and rape the plaintiff so the plaintiff will be in danger by takeing [sic] a shower with a non transgender." (*Id.*) The Loftin Declaration asserts that transgender inmates sometimes go two or three days without being offered the opportunity to shower separately from other inmates. (Dkt. #21-1.)

Finally, Plaintiff also appears to raise a claim for violation of their right to equal protection under the Fourteenth Amendment. (Dkt. #21 at 8.)

Plaintiff seeks an injunction requiring that transgender prisoners be housed and shower only with other transgender inmates. They also sees an order to provide them with sex reassignment surgery and damages of $4500. (Dkt. #21 at 8.)

## II. Defendants' Motion to Dismiss

Defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. (Dkt. #42.) First, they assert that any claims against Defendants in their official capacities should be dismissed for lack of jurisdiction under Rule 12(b)(1) because such claims are broadly barred by sovereign and Eleventh Amendment immunity and Plaintiff has not established a connection between Defendants and any viable claim for prospective injunctive relief as required to proceed under the limited exception of *Ex parte Young*, 209 U.S. 123 (1908). (*Id.* at 3–7.)

Defendants also argue under Rule 12(b)(6) that Plaintiff fails to state a claim for which relief can be granted. (*Id.* at 7–12.) They observe that Plaintiff does not allege that they were attacked again after they reported an incident to Free and was moved to another cell, and that they do not allege that they have ever been attacked or threatened in the shower. (*Id.* at 9–10.) Defendants assert that Plaintiff, therefore, has not established that he suffered any injury caused by Defendants and that "his fear of harm does not rise to the level to state a claim for deliberate indifference." (*Id.* at 10.) Defendants assert that circuit precedent establishes as a matter of law that refusal to provide sex reassignment surgery to a transgender inmate does not violate the Eighth Amendment. (*Id.* at 11.)

Defendants argue that Plaintiff does not state a claim for any equal protection violation because they do not allege that they are being treated differently than any similarly situated inmates or that Defendants have acted with any discriminatory purpose. (*Id.* at 11–12.)

4

Finally, Defendants assert that, even if Plaintiff otherwise stated any claim for relief, they are entitled to qualified immunity because Plaintiff's right to relief was not clearly established at the time Plaintiff filed this lawsuit. (*Id.* at 12–14.)

### III. Plaintiff's Response

In their single-paragraph response, Plaintiff simply reiterates their claim that denying their requested medical care and housing them with non-transgender inmates is causing mental and emotional injury and violating their rights under the Constitution. (Dkt. #53.)

### IV. Legal Standards

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). The Rules require the court to dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1)." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When the defendant alleges a facial attack under Rule 12(b)(1), "the trial court is required

merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and

6

conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*. *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

**V. Discussion and Analysis**

Ordinarily, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. In this case, however, Defendants' jurisdictional argument boils down largely to the question of whether Plaintiff has established an entitlement to injunctive relief—i.e., whether they have stated a viable claim for relief. Accordingly, the Court first addresses whether Plaintiff has stated a claim that merits the relief they seek.

1. Medical Needs

Deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth and Fourteenth Amendments and thus states a cause of action under section 1983. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647 (5th Cir. 1996) ("Since the Supreme Court has consistently adhered to a deliberate indifference standard in measuring convicted prisoners' Eighth Amendment rights to medical care and protection from harm, we adopt a deliberate indifference standard in measuring the corresponding set of due process rights of pretrial detainees."); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989) (applying Eighth Amendment standard in case brought by convicted prisoner). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court explained that deliberate indifference involves more than mere negligence. The Court

concluded that "a prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[2] *Id*. at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Moreover, to be personally liable under Section 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017). Accordingly, supervisors are not liable under a *respondeat*

---

[2] The United States Supreme Court has held that detainees carry a lower burden than convicted inmates to state claims for excessive force and need not allege or prove a defendant's subjective state of mind for such claims. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). But *Kingsley* did not involve healthcare claims and thus "did not abrogate [Fifth Circuit] deliberate-indifference precedent," which still requires detainees to "prove subjective knowledge." *Cope v. Cogdill*, 3 F.4th 198, 2021 WL 2767581, at *5 n.7 (5th Cir. July 2, 2021).

*superior* theory for the conduct of their subordinates under Section 1983 and are only liable for their own unconstitutional actions and omissions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (government officials not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (rejecting claim that defendant was liable for failure to supervise other officers because "[u]nder § 1983 . . . a government official can be held liable only for his own misconduct"). "Liability under § 1983 for a supervisor may exist based either on 'personal involvement in the constitutional deprivation,' or 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Martinez v. Maverick Cty.*, 507 F. App'x 446, 448 (5th Cir. 2013) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 n.2 (5th Cir. 1987)).

Plaintiff acknowledges that they are receiving hormone treatment for gender dysphoria. (Dkt. #21 at 7.) Accordingly, this is not a case where officials have ignored or provided no treatment at all for Plaintiff's condition. Plaintiff's claim is thus not that they are receiving no care, but they want additional care—specifically, sex-reassignment surgery. (*Id.*) That distinction is fatal to their claim.

In its review of the same claim brought by another transgender inmate, the Fifth Circuit explained that the Eighth Amendment's requirement of "essential medical care" for inmates "does not mean prisons must provide whatever care an inmate wants." *Gibson v. Collier*, 920 F.3d 212, 216 (5th Cir. 2019). Furthermore, the court explained that "[t]here is no intentional or wanton deprivation of care if a genuine debate exists within the medical community about the necessity or efficacy of that care." *Id.* at 220. Accordingly, the court's finding that it is "indisputable that the necessity and efficacy of sex reassignment surgery is a matter of significant disagreement within the medical community" meant that failure to provide such surgery—even by "blanket ban," as

9

found in Texas prison policy—could not fall below the minimum standards of decency as required to violate the Eighth Amendment. *Id.* at 216. The Fifth Circuit's ruling was clear and succinct: "A state does not inflict cruel and unusual punishment by declining to provide sex reassignment surgery to a transgender inmate." *Id.* at 216.

The *Gibson* court relied heavily on evidence in the record of a case decided by the First Circuit, *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014) (*en banc*), about the deep division in the medical community about sex reassignment surgery. It affirmed the lower court's rejection of the prisoner's claim, despite the absence of that evidence in its own record, even though "it might have been better practice for TDCJ to present its own evidence, rather than borrow from *Kosilek*":

> No legal authority compels the state, every time a prison inmate demands sex reassignment surgery, to undertake the time and expense of assembling a record of medical experts, pointing out what we already know—that sex reassignment surgery remains one of the most hotly debated topics within the medical community today. There is no reason why—as a matter of either common sense or constitutional law—one state cannot rely on the universally shared experiences and policy determinations of other states.

*Gibson*, 920 F.3d at 224. Accordingly, the court found that the transgender plaintiff's claim for denial of sex reassignment surgery failed "[a]s a matter of established precedent . . . due to the undisputed medical controversy over sex reassignment surgery." *Id.* at 226.

Since *Gibson* was decided, both the Fifth Circuit and district courts within it have applied it to require dismissal as a matter of law of Eighth Amendment claims for sex reassignment surgery. *Williams v. Kelly*, 818 F. App'x 353, 354–55 (5th Cir. 2020) (affirming dismissal under 12(b)(6) because inmate's claim for sex reassignment surgery was "foreclosed by [the] recent holding in *Gibson*"); *Layton v. McClain*, No. 6:21-cv-122, 2022 WL 1019573, at *4 (N.D. Tex. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 1018400, (N.D. Tex. Apr. 5, 2022) (recommending screening dismissal of claim for access to sex reassignment surgery because

10

"*Gibson* remains controlling precedent"). The Fifth Circuit in *Williams* added that the prisoner's deliberate indifference claim for surgery "rings hollow" where officials offer hormone treatment, which is "a known course of treatment" for gender dysphoria. *Williams* 818 F. App'x at 354.

Following *Gibson,* Plaintiff's claim for denial of sex reassignment surgery should be dismissed or failure to state a claim for which relief can be granted.

2. Safety

Like the denial of necessary medical care, the deliberate indifference of prison officials to a prisoner's need for safety violates the Eighth Amendment. The same basic standard applies: the deliberate indifference required to state a constitutional claim "is an extremely high standard to meet," *Domino*, 239 F.3d at 756, and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837; *accord Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019). Thus, the prison official "must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Accordingly, while "prison officials have a duty to protect prisoners from violence at the hands of other prisoners," a prison official may be held liable under the constitution only if he "ha[s] a sufficiently culpable state of mind, which, in prison-conditions cases, is one of 'deliberate indifference' to inmate health or safety." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (quoting *Farmer*, 511 U.S. at 834 (1994)). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020), *cert. denied*, No. 20-6847, 2021 WL 1072375 (U.S. Mar. 22, 2021), *reh'g denied*, No. 20-6847, 2021 WL 2302124 (U.S. June 7, 2021) (quoting

*Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020)). Thus, not "every injury suffered by one prisoner at the hands of another" will establish a constitutional violation. *Farmer*, 511 U.S. at 835.

The Supreme Court addressed prison officials' duty with regard to the safety of transsexual inmates in the seminal deliberate indifference case of *Farmer v. Brennan*. The plaintiff in that case alleged that he was beaten and raped by another inmate less than two weeks after defendants transferred him to a particular prison with a known "violent environment and a history of inmate assaults" and placed him in general population "despite knowledge that petitioner, as a transsexual who 'projects feminine characteristics,' would be particularly vulnerable to sexual attack" by other inmates. *Farmer*, 511 U.S. at 830–31.

After crafting the subjective prong of the deliberate-indifference test described above, the Court explained that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and that specific advance notice of the danger from the plaintiff was not necessarily required. *Id.* at 842, 848–49. It would be sufficient for a plaintiff to demonstrate "a substantial risk of inmate attacks [that] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" and circumstances indicating that a defendant "must have known about it." *Id.* at 842–43. In such generally dangerous conditions, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* at 843. In that situation, "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom." *Id.* at 844. Accordingly, the prior admissions by some defendants in *Farmer* that Plaintiff was "likely to experience a great deal of sexual pressure" and that there was a "high probability" that he "could

not safely function" warranted further proceedings on remand to determine whether Plaintiff could satisfy the deliberate-indifference test as explained by the Court. *Id.* at 848–50.

Plaintiff's allegations in this case do not rise to the level of those in *Farmer*. Despite having three chances to state a claim—twice with express instructions from the Court to include factual details—Plaintiff's allegations are not sufficient to establish a substantial risk of serious harm, much less that the risk is so obvious the Defendants must be aware of it. They complain generally about being in fear and being in danger as a transgender female housed with men, but they do not allege any obvious, pervasive, and long-standing substantial risk of attacks on transgender inmates in the Hodge Unit.

The allegation that "Plaintiff is being attack[ed]" (Dkt. #21 at 5) is too lacking in detail even to give Defendants notice of the basis for the current claim, much less establish a pervasive, substantial risk of serious harm. Plaintiff alleges that their "cellies keeps on trying to have sex with the plaintiff" (*id.*), but that assertion is ambiguous and does not necessarily suggest the use or attempted use of force against Plaintiff. Moreover, Plaintiff acknowledges that when they reported some unspecified incident or danger to Defendant Free, "Free got the Plaintiff move[d]." (*Id.*) Plaintiff is still dissatisfied with being housed with a male inmate, but they simply do not allege any facts that would elevate that dissatisfaction to the level of a substantial risk of serious harm.

The Loftin Declaration attached to the second amended complaint does not cure the deficiencies of the pleading itself. Loftin asserts that officers "are attacking" transgender inmates (Dkt. #21-1), but that assertion does not have any connection to Plaintiff's claims and would be too vague to state a claim even if it were. Loftin does provide more detail about Plaintiff's report to Defendant Free: the incident reported was an "attack" on Plaintiff that happened on August 13, 2021, and Plaintiff was advised to submit an I-60 request to be moved. (*Id.*) Although Loftin says

in his November 29 declaration that no one moved Plaintiff, Plaintiff had been moved by December 15, when he signed his second amended complaint (Dkt. #21 at 5, 9), and there is no allegation that any harm came to Plaintiff in the interim.

Ultimately, then, Plaintiff's safety claim would require the Court to find a legal presumption, in the absence of any supporting factual details, that Plaintiff is inherently at substantial risk of serious harm simply by virtue of being transgender AND that Defendants are subjectively aware of that risk. But that is not the law. Another federal court in this state rejected a similar theory just last year:

> Solis suggests that her transgendered status also bears on the deliberate indifference inquiry. However, "the mere fact that [Solis] is transgender is insufficient to show" liability under the U.S. Constitution for any assault Solis experienced. *Cox v. Nobles*, 2020 WL 1541698, at *6 (S.D. Ga. March 31, 2020) (citing *Green v. Hooks*, 2017 WL 1078646, at *10 (S.D. Ga. March 21, 2017), affirmed, 798 F. App'x. 411 (11th Cir. 2020); *Jacoby v. Carter*, 2017 WL 2962776, at *20 (N.D. Ala. May 1, 2017) ("[T]he plaintiff may not rely solely on his claims that he is a feminine, gay, smaller size white male to establish deliberate indifference . . .. Rather, . . . the plaintiff must demonstrate specific facts to show that each of the named defendants knew that the plaintiff was at risk of serious harm and took no actions to alleviate that risk." (internal quotation marks and citation omitted), *rep. and rec. adopted*, 2017 WL 2957822 (July 11, 2017); *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376-78 (M.D. Ga. 2015) (finding the complaint plausibly showed the officers' deliberate indifference based not just on the plaintiff's transgender status or Prison Rape Elimination Act standards, but also the officers' knowledge of repeated sexual assaults and being told by a doctor that the plaintiff was highly vulnerable to sexual assaults at the prison "given its population of violent offenders").

*Solis v. Barber*, No. 3:20-CV-00765-E (BT), 2021 WL 3434991, at *4 (N.D. Tex. June 30, 2021), *report and recommendation adopted*, No. 3:20-CV-00765-E (BT), 2021 WL 3419703 (N.D. Tex. Aug. 5, 2021).

That court went on in the same opinion to distinguish cases finding that transgender inmates had stated viable claims, which are equally distinguishable from this case:

14

>When courts have found failure-to-protect claims involving transgender inmates cognizable, the circumstances differ from the allegations that Solis presents here. For example, in *Zollicoffer v. Livingston*, 169 F. Supp. 3d 687 (S.D. Tex. 2016), the court refused to dismiss a transgender inmate's failure-to-protect claim involving sexual assault in which the inmate was housed in general population despite ample evidence, known to the defendant warden, that the inmate faced a serious risk of sexual assault. The inmate there alleged that she had been the victim of over a dozen rapes, assaults, and forced sexual relationships by other inmates within the TDCJ. *See id*. at 689. The inmate reported these incidents to officials, but they did "little." *Id.* Further, the court looked to Bureau of Justice Statistics to find that TDCJ prisons often reported high levels of sexual abuse and that transgender inmates in particular face a high risk of sexual assault. *Id.* at 690-91. And the plaintiff there alleged that the defendant was particularly aware of these risks, as the Department of Justice's Review Panel on Prison Rape called him specifically to discuss the sexual assault statistics at TDCJ facilities, and the defendant also personally participated in hearings on the Prison Rape Elimination Act by submitting comments and providing documents used in drafting the legislation. *Id*. at 691. The court also noted that, generally, "[t]he vulnerability of transgender prisoners to sexual abuse is no secret." *Id*. *See also, Farmer*, 511 U.S. 825 (vacating grant of summary judgment to prison officials on failure-to-protect claim when transgender plaintiff with feminine characteristics was attacked after she was transferred to a facility and placed in the general population even though defendants knew the facility had a history of violent inmates and plaintiff would be particularly vulnerable); *Green v. Bowles*, 361 F.3d 290, (6th Cir. 2004) (reversing district court's grant of summary judgment to defendant on failure-to-protect claim when transgender plaintiff with feminine characteristics was brutally assaulted when the defendant knew that transgender inmates were at greater risk of attack, plaintiff had already been removed from general population because of that risk, and was housed with an inmate known to be predatory); *Doe v. District of Columbia*, 215 F.Supp.3d 62, 76-78 (D.D.C. 2016) (refusing summary judgment on failure-to-protect claim involving the rape of a transgender inmate where jury could find the defendants "knew the risks of a leaving a transgender woman alone in a cell with a male inmate for an extended period of time").

*Id.*

Unlike the plaintiffs in those cases, Plaintiff here does not allege numerous past reported assaults, an assignment with a particular cellmate known to be a predator, or clear knowledge by Defendants of a pervasively dangerous environment. Nor can they benefit, as did the plaintiff in *Zollicoffer*, from the *Bureau of Justice Statistics, Sexual Victimization in State and Federal Prisons Reported by Inmates, 2007* (2008) ("BJS Report"), available at

15

https://bjs.ojp.gov/content/pub/pdf/svsfpri07.pdf (last visited Dec. 15, 2022). That statistical report might, at one time and in certain facilities, have established officials' knowledge of a substantial risk of harm, as the court held in *Zollicoffer*. *See* 169 F. Supp. 3d at 690–91, 697. But the data on which that report relied is now fifteen years old, and, even at the time of the report, it did not list the TDCJ's Hodge Unit, where Plaintiff is housed, among the prisons with an especially high rate of sexual violence. *See* BJS Report at 2–4, 15, 19, 23, 27, 31, 35, 39, 43, 47 (furnishing statistic for other TDCJ units). This Court cannot conclude, based on nothing more than the BJS Report, that every inmate—even every transgender inmate—in every unit of the TDCJ can establish that they are at substantial risk of serious harm and that prison officials are subjectively aware of that risk.

Defendants correctly assert that Plaintiff's mere "fear of harm does not rise to the level to state a claim for deliberate indifference." (Dkt. #42 at 10.) Plaintiff, therefore, fails to state a claim for deliberate indifference to their safety. In reaching this conclusion, the undersigned is aware that the vagueness of Plaintiff's pleadings leave room for the possibility that there are un-pled facts that might support this claim. Dismissal is nevertheless appropriate, because Plaintiff has been given two chances to amend their pleading and further opportunity to "flesh out" their claims in response to Defendants' motion, and still fails to allege any supporting facts. *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissal of *pro se* claim appropriate where plaintiff was allowed to amend his complaint once and had "opportunity to further flesh out his claims in his Rule 7(a) replies").

3. Showers

It is unclear from the second amended complaint whether Plaintiff intends to state an independent claim about their going three months without a shower. (*See* Dkt. #21 at 6.) If so, that

16

claim must fail. The Eighth Amendment requires that prison officials provide inmates with reasonable access to "the basic elements of hygiene." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (quoting *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971)). But Plaintiff does not allege that shower facilities are not available to them; they simply refuse to enter the facilities due to the fear of assault. The Loftin Declaration attached to Plaintiff's pleading states that transgender inmates occasionally "go 2 or 3 days with no showers," which confirms that Plaintiff's failure to shower for months is not the result of any denial of access by Defendants.

Accordingly, the second amended complaint establishes that Plaintiff and other transgender inmates have the opportunity to shower at least every three days. That is sufficient access to satisfy the Constitution. *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) ("Hamilton challenges the denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period. We find that these conditions do not constitute cruel and unusual punishment, so as to warrant Eighth Amendment relief.").

4. Equal Protection

Finally, Plaintiff makes one vague reference to "violations of the Equal Protection Clause." (Dkt. #21 at 8.) The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It is in essence "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Accordingly, the threshold element of a typical equal protection claim is "that two or more classifications of similarly situated persons were treated differently." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). But, as Defendants correctly observe, Plaintiff here does not allege they are being treated differently than other inmates, either as part of a group

of transgender inmates or individually. (Dkt. #42 at 12.) "A prisoner's vague and conclusory allegations that his equal protection rights have been violated are insufficient to raise an equal protection claim." *Propes v. Mays*, 169 F. App'x 183, 185 (5th Cir. 2006). Plaintiff fails to state a claim for violation of his right to equal protection, and Defendants are entitled to dismissal of that claim.

## VI. Conclusion

For the reasons explained above, Plaintiff fails to state a viable claim for any type of relief with respect to any of their allegations, and Defendants are clearly entitled to dismissal under Fed. R. Civ. P. 12(b)(6). There is no need for the Court to prolong its analysis with discussion of Defendants' other asserted defenses, including immunity, qualified immunity, and standing.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion to dismiss (Dkt. #42) be **GRANTED** and that this action be **DISMISSED** pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted. Because it remains possible that Plaintiff might be able to allege facts, not yet pled in this case, that establish that they are at substantial risk of serious harm and that defendants have been deliberately indifferent to that risk, the dismissal of their safety claim should be without prejudice. In all other respects, dismissal should be with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to

factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 21st day of December, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE